Good morning, your honors. I'm Brian Leslie representing Mr. Stever. There are two issues which flow from each other. The first is the district court's denial of discovery about Mexican drug trafficking organizations, which we think would have led to the development of admissible evidence. And the second was the district court's denying us the ability even to mention the possibility to the jury that a drug trafficking organization may have been responsible for this growth as a way of presenting to the jury an alternative explanation for how the crime may have been committed. May I ask you a preliminary question? In your reply brief, you drop your arguments that the Court erred in failing to instruct the jury on jury nullification and the mandatory minimum sentence. Do you concede that these arguments fail in light of the cases cited by the government? I don't concede that the argument fails, Your Honor, but I do recognize that the primary case that we cited in our opening brief was reversed by the circuit in which it is, and out of economy didn't continue the argument in the reply brief. But I don't want to say I've abandoned it. I simply want to say that I recognize some of its difficulties. All right. With regard to the two major issues, they kind of collapse into one for most purposes, don't they, because the district judge's reason in both instances was the same. I think they do, because I think that part of the threshold showing I need to make to justify discovery is I have to explain at least in general terms how the evidence might potentially be admissible. And I don't think that the district judge's position was it's all irrelevant to the point of being immaterial because whether or not there was such an involvement wouldn't go to your client's culpability. I think that is what the judge said, but I don't agree with it, and I don't even claim that I entirely understand the judge's thinking in that regard. We believe that this was a circumstantial case, which I think is clear, but that the government's circumstances, the circumstances put forward by the government were certainly what the government wanted to put forward, but we wanted to put forward other circumstances that we thought the jury should be able to take into account in deciding whether beyond a reasonable doubt the defendant was conspiring with the people who were back there growing the marijuana. And we think, among other things, that the secretive nature of the organizations would have been a circumstance that the jury should have been able to take into account. Was there a step missing? I don't think so, Your Honor. Was your client claiming that he had nothing to do with the grow, that he just looked out and one day it was there? Your Honor, our client claims that he had nothing to do with the grow and didn't know it was there. He never looked out and saw that it was there. There's no evidence that he had ever – there's no direct evidence that he ever had any knowledge or connection with the grow. It was all circumstantial. The indirect knowledge is essential – or the strongest direct evidence is that he was in frequent contact with the person who was out there to the day of the search. I think that's right. He'd hired this person and some associates of this person to do some work toward what I'll call the front end of the property, the end of the property closer to where his mother's house was that he was living. And I think there is – So far away that you couldn't have seen the marijuana growing? There's a hill in between. It's not only far away, but there's a hill in between. And I don't – I'm trying to – I don't want to misstate the number. It's like three-quarters of a mile or a mile away between the generator and the marijuana grow, and you have to go kind of a circuitous route around the long hill. The government had a map in the excerpts, and I can cite the page. In fact, I'll do it now. It's actually a diagram. It's page 105 of the excerpts. And it's an aerial photograph that actually shows the nature of the road from the generator back to the marijuana grow. It actually has to go this way and then around the hill and then back into the meadow, so it kind of makes a big loop. But on his version, my recollection is, there was – this guy was working for him for a while and living nearby along the creek. And then what? Then it was finished, right? No, he didn't actually – he said that he fired them for not doing the work, that they had – I don't want to put detail that's not on the record, but that's basically his claim to the police when they question him about him is that he fired them because they weren't doing the work. Okay. The evidence, though – So why does he – did he ever explain why he was still talking to them all the time? Well, I think the explanation is that it was a social thing that they would drink and party in these trailers that were next door to his mother's house. And I think they continued to do that. I mean, our version would be that he continued to do that with them even after –    But I think that's the point. But can you tell us where he thought they were living at that point? Well, there's nothing in the record about that. But keep in mind, the defendant didn't testify either. So a lot of his account didn't make it into the record. But certainly our claim would be that they remained in the locality and perhaps were looking for other work in the locality, as many others would do. But the overall point I'm making is that in a circumstantial case, we were entitled to develop and present to the jury what we claimed the full set of circumstances to be, and we were denied that opportunity by the judge's decision not to grant us discovery. The showing that we have to make in order to justify or in order to be entitled to the discovery is, in my mind, not a very difficult one, and we more than amply satisfied it. And that is, under the case law, we have to show facts to demonstrate that the government possesses information helpful to the defense. Another formulation is that the government possesses information relevant to the development of a possible defense. So what is the remedy at this point? Suppose we agreed with him. We then sent it back to the district court to order the discovery and see what was in it and then decide whether it would have been prejudicial or not prejudicial or what? No. I think the remedy is to reverse the conviction and remand it to the district court. But the answer might be the government had nothing. I can't say that I've thought about that issue, and I'm thinking about it now. The government did not ever deny that they had this information, and we certainly presented some of it that we were able to find from public sources. But I also, I mean, part of my answer is colored by the fact that I read in the paper frequently about the infiltration of Mexican drug trafficking organizations into the northwest and into the rural parts of eastern Oregon and the dangers that they present to law enforcement and the dangers they present to the community. And it's difficult or impossible for me to believe that there aren't law enforcement task forces and law enforcement intelligence networks that are compiling known information about these organizations. That's just not the way law enforcement works. And when we look at the information that we did find from public sources, it is task forces. And it is, there's clearly an information network of law enforcement, and it's just impossible to believe that they don't have intelligence about these organizations. On top of the fact that we have, in the proffer we made to justify discovery, we had a report written by an officer who purported to be an expert. I don't mean that in a technical sense, but who in a report made statements about the characteristics of these organizations that he learned through his training. And we have Trooper Mogul, the case officer in this very case, whose resume includes having gotten training in drug trafficking organizations. And so there's got to be information. I just, I'm hard pressed to believe there is. But you had some information. You had an expert and you had some other information, I don't remember what, that you wanted to put on and you weren't allowed to. And why wouldn't we be on sounder ground if we were concerned about this at all to rule on the ground of your inability to put on what you did have instead of speculating about what you didn't have? Well, because what we, we believed that what we had was the tip of the iceberg. And we believed that what we had. What did you have? You had an expert and what else? Well, we had a person that we were going to put forward as an expert. The government denied that he was an expert, or I think that's correct. But he was the best guy we could come up with. We also had several reports from, one of them was from the DEA. One of them was from what I characterize as a task force. I'm not, I don't want to mischaracterize it, but it came out of the State of California. One of them was a national fact sheet issued by a national law enforcement organization in D.C. They were exhibits 130 to 134 that we proffered to the court, and they're all in the excerpts. And they're discussed at, I think, pages 10, 11, and 12 of my opening brief. It's probably the best citation that describes what they are. But they didn't answer some, all the questions we had. For instance, we had references in there to establishment of large outdoor marijuana grows in rural parts of Oregon on public and private lands. Okay? And a big part of the government's argument in its closing here was that the nature of this grow, the way it was laid out, it would have been obvious to anybody who came back there. And I think the government's probably right about that. I mean, there's water piping laying all over it. And so they're using that as evidence that the landowner had to have known about it. And, of course, knowledge would have taken more than knowledge, but they're using that as part of their circumstances. And I think that if we were able to develop, if we were able to investigate and look at other situations of Mexican DTO grows on private lands, we'd see similar things. We do have, but we didn't get that. We do have references in there to father and son being shot when they discovered a grow on their own property. We do have references to grows on private land and some of the task force information. But it's not specific enough, and I think we would have gotten better. The other thing that we don't have as nailed down as I think we would get is discussion about the exclusive nature of these organizations. And how they are bound by ethnicity, how they are bound by often coming from the same village or the same extended family. I think those things are true. I think we have some oblique references to them, but we didn't get them out of the public sources as well as I think the government has. Certainly we would have liked to have used what we had in evidence. Certainly we would have liked to be able to make those arguments to the jury. But I think there's more, and that's what we wanted. I do want to talk about one argument that the government makes in its brief and that it also made in the district court. And that is the government says that we haven't made a sufficient showing about that very point I was just making about the exclusive nature. In other words, we haven't shown that even if it was a Mexican organization, that that doesn't mean that they weren't involving Mr. Steber. And I think that might have been some of the judges, the district court judges thinking too. My response to that is twofold. First, we don't have to make that showing. In a circumstantial case, all we have to do under the case law is present to the jury an alternative explanation for how the crime might have been committed. And the fact that other people had access, the fact that other people do this kind of thing would have been an alternative circumstance. So we don't – in order for the evidence to be admissible and discoverable, we don't actually have to make that leap of saying, no, they wouldn't have included Andrew Steber. But did the government in this case rely as an important circumstance just on the fact that it was on his property and have him not know about it? Over and over and over again. And in my brief, I cite all of the pages of Mr. Fong's closing argument. And it's an entire line of text in my brief, just the page numbers of the times that he referenced the fact that it's on that property as an important circumstance, which he called over and over and over again. The second point I was going to make about the exclusive nature is that even though we don't have to make that showing in order for the evidence to be admissible, I think we actually did make that showing and I think we could have made that showing. And as I just said, that was, I think, the main thing we wanted or one of the main things we wanted that we didn't get. I ask you just one quick question here. In looking at the cases, it appears to me that this Court hasn't set forth a test to determine when the exclusion of evidence deprives a defendant of the Fifth or Sixth Amendment rights. What standard would you suggest that we adopt for that purpose? Well, I'm not — is Your Honor asking for a standard of review or is Your Honor asking for a test of what the district court judge is supposed to do? A test of what the district court judge is supposed to do in trying to exclude the evidence. On what basis? To me, the answer comes from one of the cases I cited in the brief, and I think it was the Vallejo case that said that it is the jury's province to decide whether the explanation given by the government is fanciful or reasonable. It was given by the defendant. Yes, that's right. I'm sorry. I may have misspoken. And so whatever standard this Court sets for preclusion of a defense, I think it has to be one that recognizes that the jury is ultimately supposed to decide what's reasonable and what's fanciful and is not really the Court's determination. And so I think the standard has to be something along the lines of some minimal threshold that we have to reach, because if you go beyond that, then you're taking it away from the jury, and that would be wrong. Thank you. Okay. Thank you very much. Counsel. Hey, please, Court. My name is Doug Fong, and I represent the United States in this matter. The evidence that the defendant requested in discovery, as well as the evidence that they attempted to introduce at trial, was other crimes and character evidence governed by 401 and 403. None of that evidence was exculpatory, tended to exculpate the defendant in this case. Well, it strikes me about this case, this kind of instinctual response, is that the defense that somebody was growing marijuana on my own property and I didn't know it, is going to be not taken very seriously by a jury unless they know that this has happened in eastern Oregon. And that's really the most important thing to me. The ability to introduce evidence that there is a realistic possibility that there are people going around growing marijuana on property they don't own, their defense is useless. So why isn't that a good enough reason why they should have been able to do the discovery and or put on the evidence? Judge, the government has the burden of proving this defendant's knowledge, obviously. The defendant has a right, an entitlement, to produce evidence of lack of knowledge. However, in this particular case ---- But a great deal of your evidence of knowledge was that it was his property, no? Judge, it wasn't so much ---- one of our pieces of evidence was that, in fact, it was his property. But there was other things as well. And so why isn't it completely responsive to that, that there are people going around eastern Oregon growing property ---- growing marijuana on property that isn't theirs? Because this is not a situation where, well, if ---- that someone else must have done this and then the defendant didn't. Let's suppose that there was no other grows in Oregon whatsoever of this similar nature. That really has no bearing on, well, did this defendant know in this case or not? I'm really having a very hard time with that. I think it has enormous bearing. It has enormous bearing to my reaction to the evidence. Okay. Let me see if I can illustrate that with an example. The defendant's premise is this, Your Honor, is that this grow had the characteristics of a Mexican DTO grow. Mexican DTOs are unlikely to involve white people in their grow. The defendant is ---- That makes it less ---- a little bit less more likely that the government's circumstantial case, because it was a circumstantial case, that the inferences that can be drawn from that shouldn't be drawn because there are other explanations. Okay. Yes. And so let's suppose ---- and because the defendant is white, therefore, it was not likely that he would be involved in this particular because it has the characteristics of Mexican DTO grow. The problem with that analysis, the reason why it's not probative at all to this defendant's guilt or knowledge in this case is because what the defense is trying to do is to base his guilt or innocence on statistical inferences from unrelated cases. Doesn't the government do that all the time when it introduces drug experts to tell the jury the way drug deals usually operate or where the gangs usually operate and so on? And it is likely that in the gang cases, for example, gangs operate in a certain way. Therefore, if this person is doing this, it's probably because he's advancing the gang. Doesn't that happen all the time? It can happen if it explains the facts that are presented in a specific case.  They want the expert to say, well, look, I've investigated other similar cases. I've never seen a white person involved in these other cases that are similar to this, okay? That really has no factual or statistical connection to the case at hand. It makes it more likely that the inferences that you're asking them to draw, because they're only inferences from circumstantial evidence, shouldn't be drawn because there's another possible story. You have one story and he's saying here's another one. In all due respect, Your Honor, it doesn't make it more likely. And let me illustrate this. At one time, for instance, let's suppose at one time all bank robberies used to be done by men. Men traditionally did not include women in their bank robberies. Bonnie and Clyde come along and they rob, say, the Wells Fargo Bank, okay? Does it make it, the fact that no woman has ever committed a bank robbery before and not involved with men, does that make it more or less likely that Bonnie a woman robbed the Wells Fargo Bank? And the answer is no. The statistic is interesting. If this is true, then the next time the United States comes up with some of its gang evidence, I will recite it back because that's exactly the character of that evidence. Right. Gangs usually do X, therefore it's more likely that this guy did X. Okay. And the answer is no. There's that may be an interesting statistic. And that statistic might say, because of reviewing these other cases, that statistically women don't commit bank robberies. But unless there's a nexus with that statistic to this case, if there's no nexus between those statistics, if there's no causal relationship between the statistic that you have and the present case, then that statistic is meaningless. I mean, Bonnie, would a trial court allow Bonnie to come in and say, well, look, I didn't do it. I must not have known about the bank robbery because no woman in the past has done it. Would the trial court allow Bonnie to come in and say, well, I didn't participate with Clyde because ‑‑ But why doesn't it refute the argument that you should draw the inference that simply from the presence of the marijuana grow on the land that he had knowledge. Okay. It certainly makes ‑‑ Right. If there are people who are in fact growing marijuana without the knowledge of the marijuana grows out there, doesn't make it more or less likely that this particular defendant knew about the grow on his property. Let's suppose that the government introduced, like the Federal Government,   out there that were similar in characteristics to this one, and then made the distinguishing characteristics of this grow with the other grows. Let's suppose the government was trying to prove that it was the Mexican DTO, that the guy who ‑‑ they weren't after this defendant. They were after the Freddy guy. And they wanted to demonstrate, A, that he was a member of a Mexican drug trafficking organization, and, B, that Mexican drug trafficking organizations grow their marijuana in a certain way. Now, I know you'd be up here arguing that that evidence was miscible evidence. But, Your Honor, if we were doing that, think about the context in which we would want to do that. We would want to be able to show that basically to try to convict a person for an inappropriate reason, and that would be because of its race. We would want to do that, for instance, let's suppose there's a hiker wandering through this grow that had nothing to do with the grow, but he just happened to be Hispanic. And we would want to say, well, the reason for us wanting to do that, I imagine, might, if anything, would be to say, well, he's Hispanic, this is a Hispanic grow, so, therefore, he must be guilty. And that would be an inappropriate purpose. And that's just what ‑‑ But you're focusing on just one small part of what it is they're trying to show. And I'm saying that there are other aspects of what they're trying to show that go to refuting some aspects of your inferences. Simply the fact that people grow marijuana, that this organization exists and grows marijuana on other people's lands at least refutes a major part of your case, which is that you should infer his knowledge from the fact that they were growing on his land. Okay. Judge, I sense that you're concerned about the quantum of the government's proof in this case. And it's certainly a lot stronger than what the defendant ‑‑ Well, I'm really not, because the first point is a discovery point. Right. Because the whole point of this is this, Judge, is if the defense could show some kind of statistical or factual relationship between these other crimes' evidence and the present case, then maybe they would have an argument. But as Judge Hanner wisely determined, look, this is not about whether or not this is a Mexican DTO grow or not. Let's suppose we already have two Hispanics that we know were involved that were closely associated with the defendant. Let's suppose there was one more. How does that make this defendant's knowledge more or less likely? Let's suppose there were 20 more. That doesn't make this defendant's knowledge of the grow more or less likely. What makes this defendant's knowledge more or less likely are the circumstances that you find in this specific grow. The fact that not just that it was on his property, but it was in plain view, the hoses were ‑‑ there was no attempt to conceal anything on this property from the landowner. The fact that he tells the rancher that wants to rent his place, look, I can't rent the property to you because I've leased it out to someone else for more money and no accounts. We have the other folks that testify to this defendant's statement of, I don't have a truck, when in fact that he does. I mean, there's all these other circumstances that connect him with the grow. Now, if that's not sufficient, that's fine. But the fact is this. The jury found it was sufficient. But the plain fact of the matter is this, is that this is not a case where if someone else did it, this defendant didn't. This is not a Brady issue here where these folks must have done it, and so therefore the defendant did it, or the defendant didn't do it because these folks did it. We know there were other people at this grow. We know there were at least two other people. We could speculate and say maybe there were more, maybe they weren't. Maybe it was a DTO grow, maybe it wasn't. But we know there were at least two other people involved that were Hispanic, and we know they were closely associated with this defendant. We know that the well was dug with a backhoe. We know that the access to the grow was right across from this defendant's house. We know that this defendant knew how to run a backhoe. Now, it's possible. There are a few other people in Eastern Oregon who know how to run backhoes, probably. I'm sorry? There are probably a few other people in Eastern Oregon. Sure, sure. But the whole point of this is this. This defendant's knowledge can be proved or disproved by the circumstances that the officers encounter and everything that's directly related to that. But to say that this knowledge all of a sudden is a function of other cases where there's no factual or statistical nexus between these other cases and the defendant's case itself really just invites speculation. And this is not speculation about a theory, as the Court argued in Vallejo. This is a speculation about facts that the defendant wants to put in and facts that are totally, absolutely unrelated to the defendant's knowledge or involvement in this case. It's just like Bonnie's saying, look, no women are involved in bank robberies, therefore I must not have known about these bank robberies. It's like Bonnie's saying, men don't involve women in their bank robberies. That may be true. Maybe no woman has ever committed a bank robbery before that. Maybe no white person has ever been involved in this kind of grow before the defendant. But that statistic has no bearing on this defendant's knowledge of this particular grove. But Mr. Palmer, you may have missed the point that I think the judge is making. I think she's not – you are arguing about similarity, assuming his knowledge and his involvement, and the question is, is it – should he have been able to say to the jury, in addition to saying, I didn't do it and I had no involvement, somebody else could have done it and we know somebody else is doing it in other places because it's been done to other people. It isn't that somebody else did it, therefore I couldn't be involved. Somebody else did it, therefore no white people were involved. It's who put the marijuana on the table. And in certain circumstances, like in the Crosby case where, for instance, the defendant said, look, I didn't do it. And the jury's question, well, if he didn't do it, well, who did? And if that's – in that circumstance, it's absolutely – Is it true that you relied heavily at trial on the location of the marijuana grove? Judge, not just the location, but this defendant's association. Not just. I understand not just. Correct. But did you rely on it? Yes, absolutely. And suggest that the jury draw an inference in part based on the location, saying something that would have sounded very sensible to most people, which is people don't do things on other people's property that they don't know about. No, that – no. That makes it more likely that he knew about it. Judge, that is absolutely not true. We did rely on the fact that it was on this defendant's property. And therefore, and that made it more likely that he knew about it. Well, I mean, people have things done on their property all the time that they don't know about. And so we never made that argument at all. The argument in this case – What was the basis for the inference, then? The argument in the facts in this case were not just that it was on this defendant's property, but it was in plain view. It was how the property was characterized. Plain view of who was there. And it was in plain view of, say, what the – of the property owner. And the access to this particular grove was done directly across from this defendant's house. That, in fact, the well was dug in a certain place where only really the property owner would have specialized knowledge that there was a low water table. At the well, there was a loud generator in this place where the property owner would have been able to hear because – the generator because our officers could hear it from at least a quarter mile away. And so, again, this defendant made statements to the rancher that when the defendant's mother said, yeah, you can graze your cows on this property again, this defendant made statements to the rancher saying, hey, I'm sorry, you can't do that this year because I've leased the property out to someone else for more money with the other co-defendant's associations with this defendant. And this defendant's false statements about the co-defendants and his association and his not seeing them. I see that my time is up. Thank you very much. Thank you. We'll give you a minute to wrap that up. On page 36 of my opening brief, I cite 14 different pages of the prosecutor's argument where he relied on the location of the grove on the defendant's mother's property. But then how do you respond to his argument the road went right in front of the house, that the well was dug, it affected the water table, that he says this was all in plain view. I assume he means the road, the well, if not the marijuana over the hill. The marijuana grow was a mile or more from the defendant's house down a dirt road toward what I refer to as the back end of the property abutting Forest Service land. In fact, the camp tent. Did the road lead to the marijuana? Well, only in the sense that the whole area is laced with dirt roads. And so there wasn't, although there was one road that kind of led back in that direction, by the time you get back to the marijuana road area, the roads had become splintered. It was not visible unless you went back in that area. It was not visible from the house. It was not visible from the generator. It was not visible until you went all the way around the hill and into the meadow area back by the Forest Service. How about the noise made by the generator? The government could not prove that the noise made by the generator could be heard from over the hill. And, in fact, we had a motion in Lemonade before the trial at which the judge agreed that the government could not produce that evidence. I think, I don't want to misstate, I think that's what the ruling was. But the government conceded that they couldn't prove that you can hear the generator or you can hear that water pump from over the hill. And that was never part of the evidence at the trial. Okay. Thank you both very much for an interesting argument and an interesting case. United States v. Stever is submitted. And we'll go on to United States v. Avila.
judges: Farris, Nelson D. W., Berzon